## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **LaTonjia Robinson-Brown** ) | |
| **9413 Ellison St** ) | |
| **Fort Worth, TX 76244** ) | |
| ) | **Civil Action No.**_____ |
| **Plaintiff** ) | |
| ) | **Jury Requested** |
| **v.** ) | |
| ) | |
| **Pam Bondi** ) | |
| **U.S. Attorney General** ) | |
| **Department of Justice** ) | |
| **Washington DC 20530** ) | |
| ) | |
| **Served on:** ) | |
| **Pam Bondi** ) | |
| **U.S. Attorney General** ) | |
| **Department of Justice** ) | |
| **950 Pennsylvania Avenue, N.W.** ) | |
| **Washington DC 20530-0001** ) | |
| ) | |
| **U.S. Attorney's Office** ) | |
| **601 D Street, N.W.,** ) | |
| **Washington DC 20530** ) | |
| ) | |
| **Defendant** ) | |

## COMPLAINT

**COMES NOW** Plaintiff, LaTonjia Robinson-Brown (hereinafter "Plaintiff" or "Ms. Robinson-Brown"), by and through her undersigned counsel, and sues Department of Justice (hereinafter "Agency" or "Defendant"), and for cause of action states as follows:

## NATURE OF THE CASE

1.    Plaintiff brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 (hereinafter "Title VII"), as amended, 42 U.S.C. § 2000e, *et seq.*, for relief from racial discrimination.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. § 1331, as it asserts a claim that arises under laws of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.

3.      Venue is appropriate and i s based on the fact that a substantial part of the actions complained of are the result of actions and the employment practices of Defendant, a municipality within the State of Maryland. *Id*.

**EXHAUSTION OF REMEDIES**

4.      Plaintiff timely contacted the Defendant's EEO Office and filed a  Formal complaint against DOJ alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. §2000e, *et. seq.*,

5.      Plaintiff has exhausted all of her administrative remedies.

6.      On or about July 4, 2023, Plaintiff filed a Formal Complaint of Discrimination with the Agency alleging that DOJ had violated Title VII of the Civil Rights Act of 1964, as amended, due to discrimination based upon her race, color and sex, harassment and retaliation.

7.      On February 21, 2025, the Agency issues its Final Order and Memorandum Explaining Final Order. The Final Order stated that Plaintiff have the right to file a civil action in the appropriate United States District Court within 90 days of the date Plaintiff received the Final Order.

8.      On May 22, 2025, Plaintiff timely filed her action within ninety (90) days of receipt of the Agency Final Order.

## PARTIES

9.      Plaintiff is currently domiciled at 9413 Ellison St, Fort Worth, TX 76244.

10.      The United States Department of Justice is a federal executive department of the United States Government, and an agency subject to the provisions of Title VII of the Civil Right Act of 1964 as amended, and is subject to suit for the negligent, discriminatory, wanton, willful or wrongful acts and/or omissions of its employees or agents and is therefore liable, pursuant to the doctrine of *Respondent Superior*.

## FACTUAL
## BACKGROUND

11.      Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

12.      On or about April 13, 2020, Defendant employed Plaintiff as a Medical Officer, GS-11 at FMC Carswell in Fort Worth, Texas.

13.      Plaintiff identifies as an African American female whose color is black.

14.      At all times relevant hereto Plaintiff's work performance was at least satisfactory.

15.      At all times relevant hereto, Plaintiff's direct supervisor was Clinical Director Maitee Serrano- Mercado, MD ( Dr. Mercado).

16.      Dr. Mercado, who is Caucasian, became Plaintiff's first-line supervisor on July 12, 2022.

17.      On July 18, 2022, the Clinical Director attempted to rescind previously approved leave that had been granted by the prior Acting Supervisor, HSA Director M. Chano, and only accepted the validity of the leave after the Union intervened on the Plaintiff's behalf.

18.     On August 1, 2022, the Clinical Director engaged in continuous harassment and targeting by reporting inaccurate information about the Plaintiff's patient management to a medical overseeing agency.

19.     On August 8, 2022, the Clinical Director persistently harassed the Plaintiff by assigning an impossible task, fully aware that the Plaintiff's annual leave, CME leave, and call schedule precluded sufficient time for completion, and further increased the Plaintiff's call days post-promotion due to an alleged imbalance of call distribution.

20.     On September 14, 2022, the Clinical Director falsely accused the Plaintiff of leaving the facility for over an hour, despite the Plaintiff having remained on-site to see a patient following a 7:45 a.m. meeting; later that day, the Clinical Director convened an unexpected meeting with the Union representative to lodge the same unfounded complaint.

21.     On October 16, 2022, the Clinical Director sent frequent, micromanaging emails that interfered with the Plaintiff's workflow and required constant defense, a scrutiny not applied to male physician colleagues.

22.     On October 20, 2022, the Plaintiff was required to staff the Camp Clinic without nursing assistance for tasks including taking vital signs and chart documentation, while a male colleague was consistently provided a nurse; prior requests for assistance were routinely denied.

23.     On November 2, 2022, the Clinical Director repeatedly summoned the Plaintiff to the morning meeting despite previously authorizing office-based work that same morning, including phone inquiries to the Plaintiff's office to confirm attendance.

24.     On November 3, 2022, the Clinical Director again confirmed the Plaintiff's whereabouts by office call and then persisted in querying other staff members during the morning meeting, notwithstanding the Plaintiff's prior confirmation of presence.

25.     On November 9, 2022, the Clinical Director showed favoritism toward a newly hired white male physician by requiring the Plaintiff to forgo sick leave to assist that physician, citing a promise "not to let him fail."

26.     On November 15, 2022, the Clinical Director falsely accused the Plaintiff of failing to see scheduled patients.

27.     On November 22, 2022, during the morning meeting, the Clinical Director ignored and disrespected the Plaintiff by denying speaking turns, cutting off comments, and labeling interjections as insubordinate when the Plaintiff challenged exclusion and discrimination, only permitting Plaintiff's valid patientcare and housekeeping concerns after others agreed.

28.     On November 30, 2022, the Clinical Director created an environment of horizontal workplace violence by coercing the Plaintiff into impromptu counseling sessions, bursting into the office mid-patient care to present false documentation and press for signatures on inaccurate records, particularly during the Plaintiff's Medical Officer of the Day call week.

29.     On December 1, 2022, the Clinical Director falsely accused the Plaintiff of patient mismanagement, denigrated medical judgment, and singled out the Plaintiff in contrast to white male colleagues.

30.     On December 2, 2022, the Clinical Director harassed the Plaintiff by demanding completion of a task during a known National Computer Outage, insisting such an outage did not exist despite frequent system failures at FMC Carswell.

31.     On December 6, 2022, the Clinical Director denied the Plaintiff's repeated requests for a Union Representative during an impromptu counseling meeting.

32.     On December 14, 2022, the Clinical Director continued micromanagement by monitoring the Plaintiff's chart work and excluding the Plaintiff from critical Transgender program meetings, despite prior designation by the former Clinical Director as Transgender physician liaison.

33.     On December 15, 2022, the Clinical Director demeaned the Plaintiff's surgical expertise by sending detailed pre-operative clearance instructions, copied from an external medical information system, requiring the Plaintiff to stay late to produce a clearance evaluation despite the Plaintiff's extensive OB/GYN surgical background.

34.     On December 16, 2022, via email, the Clinical Director questioned the Plaintiff's management of a syphilis patient, despite standard collaboration with Infectious Disease Nursing, and continued to single out and micromanage the Plaintiff contrary to male peers.

35.     On December 20, 2022, the Clinical Director directed medical records staff to inquire into why the Plaintiff had not seen a patient, who was, in fact, awaiting evaluation, while the Plaintiff had momentarily left to retrieve equipment.

36.     On December 20, 2022, the Clinical Director sent an email falsely accusing the Plaintiff of violating co-signing policy, citing a 14-day co-sign requirement applicable only to contractors, not BOP employees, misleading Regional Director and AW Collins, without issuing a corrective follow-up.

37.     On December 27, 2022, the Clinical Director emailed and called the Plaintiff to read and respond to an email sent to AW Collins falsely accusing the Plaintiff of not seeing a patient who had immediately reported to the CD's office after being evaluated.

38.     On December 28, 2022, during the Plaintiff's Medical Officer of the Day week with increased responsibilities and no support staff, the Clinical Director persistently harassed

the Plaintiff by radio and phone inquiries about patient visits while the Plaintiff was actively evaluating patients.

39.    On December 28, 2022, later that same day, the Clinical Director interrupted the Plaintiff's workload an hour before shift end to discuss a third-quarter performance review, forced the Plaintiff to accept "minimal satisfactory" ratings, never previously received, without discussion or justification, while not requiring comparable forms of review for white male colleagues.

40.    On January 3, 2023, the Clinical Director attempted to schedule a meeting to discuss the disputed performance review after learning the Plaintiff planned to meet AW Collins; the Union President then barred the Plaintiff from meeting with the CD, and the meeting shifted to AW Collins.

41.    On January 12, 2023, the Plaintiff again staffed the Camp Clinic without nursing support, performing ancillary duties alone, while a male colleague enjoyed consistent nurse assignment; pre-requests for assistance continued to be ignored.

42.    On January 18, 2023, Assistant Warden (Medical) Collins allotted only thirty minutes to address the Plaintiff's concerns of harassment, targeting, and discrimination, denying rescheduling despite Union Representatives' request for adequate time, and commenced the meeting by querying the Plaintiff's interpretation of "horizontal workplace violence."

43.    On January 20, 2023, in apparent retaliation for elevating complaints to AW Collins, the Clinical Director confronted the Plaintiff in the hallway thirty minutes early, contrary to the CD's typical arrival time, and at the morning meeting again ignored and minimized the Plaintiff's contributions, demanding a leave slip despite uncompleted call-week

duties and requiring documentation of alleged tardiness from unspecified staff sources, which those staff later denied.

44.     On January 27, 2023, the Clinical Director repeatedly monitored the Plaintiff's whereabouts by entering the office to "see if I was OK," contributing to an atmosphere of mistrust and surveillance.

45.     From January 31 to February 3, 2023, despite inclement weather shutting down the Dallas/Fort Worth area, the Plaintiff was the sole physician reporting to work on February 1; after a sick day on February 2, the Clinical Director commented on the Plaintiff's hair the following day, illustrating unwarranted personal scrutiny.

46.     On February 15, 2023, the Clinical Director renewed false accusations that the Plaintiff had not seen patients on the call-out list, continued micromanagement of clinical duties, and imposed added responsibilities outside the Plaintiff's scope.

47.     On March 1, 2023, the Plaintiff notified the CD of a twenty-minute delay, submitted a leave form as requested, then worked an extra hour after shift end for Medical Officer of the Day duties without additional compensation or leave adjustment.

48.     On March 2, 2023, the Clinical Director convened a second meeting after the morning huddle to single out the Plaintiff, reciting unfounded accusations of missed appointments, issuing inaccurate directives beyond policy, micromanaging, and assigning out-of-scope tasks, while the Plaintiff again lacked nursing and support staff.

49.     On March 3, 2023, during the morning meeting, the Clinical Director ignored the Plaintiff while addressing male physicians, repeatedly cutting off the Plaintiff's attempts to relay important patient-care information, thereby undermining medical communication.

50.     On March 8, 2023, despite performing a medical emergency response at 3:34 p.m. and remaining on duty until 7:30 p.m. to admit an inpatient, alone due to limited staffing, the Clinical Director accused the Plaintiff of poor time management and required excess hours without comparable expectations for male colleagues.

51.     On March 9, 2023, the Clinical Director documented in patient charts that the Plaintiff had been "late since 3/3/23," misattributing scheduling adjustments and reinforcing a pattern of false recordation.

52.     On March 14, 2023, the Clinical Director again accused the Plaintiff of deficient time management despite the Plaintiff having stayed until 7 p.m. for seizure emergency duties, continuing the cycle of harassment.

53.     On March 16, 2023, the Clinical Director overscheduled the Plaintiff's patients and engaged in micromanagement; in a Union-attended meeting with HSA Director and Advanced Practice Providers, discussions of "No Show" and overbooking occurred, yet control over the Plaintiff's schedule remained with the CD.

54.     On March 17, 2023, in retaliation, the Clinical Director assigned seven chronic-care patients to the Plaintiff during a Medical Officer of the Day week, while a colleague received five, exacerbating workload disparities.

55.     On March 29, 2023, at the 7:45 a.m. meeting, the Clinical Director again bypassed the Plaintiff while soliciting reports, consistently calling on male physicians, limiting female voices, and addressing other female colleagues only when forced, creating a condescending and hostile environment.

56.     On April 5, 2023, after a scheduled meeting, the Clinical Director summoned the Plaintiff for an unplanned performance-evaluation discussion, denying a Union Representative

until after persistent requests—and forced the Plaintiff into an impromptu ninety-minute session, resulting in significant after-hours work to complete that day's duties.

57.    On April 7, 2023, the Clinical Director again falsely accused the Plaintiff of missing a patient, misidentifying one of two similarly named patients, despite supporting records confirming appropriate care dates.

58.    On April 14, 2023, the CD displayed new-hire favoritism by appointing a recently hired male physician as Acting Clinical Director in her absence, despite prior instructions that the Plaintiff could only serve after six months, whereas the Plaintiff and another senior female colleague were passed over, evidencing covert discrimination against the only Black female physician.

59.    Later on, April 14, 2023, the Clinical Director again challenged the Plaintiff's arrival time, demanding a leave slip after allegedly observing the Plaintiff in the sallyport at 6:50 a.m., despite evidence the Plaintiff arrived second, while not requiring leave slips from staff arriving later.

60.    On April 18, 2023, during a formal Performance Evaluation meeting, the Plaintiff received an overall "minimal satisfactory" rating, never previously assigned, despite a flawless record since hire, the Plaintiff attributes this rating to race, color, sex, and reprisal discrimination.

61.    On May 4, 2023, the Clinical Director excluded the Plaintiff from Transgender physician-coordinator duties, overlooking, disregarding, and omitting the Plaintiff from critical emails, meetings, and events.

62.    On May 11, 2023, the Clinical Director encouraged negative documentation from staff and patients, fostering email chains and record-keeping aimed at future disciplinary use

against the Plaintiff, thereby perpetuating a hostile work environment and targeting the Plaintiff's workload disproportionately compared to male colleagues.

63.    On June 13, 2023, the Clinical Director continued harassment by accusing the Plaintiff of failing to see a patient and soliciting negative documentation from custody patients; on June 19, 2023, the Plaintiff was diagnosed with bruxism and molar stress fractures linked to anxiety and stress from continuous horizontal workplace violence.

64.    On June 21, 2023, the Clinical Director refused to reinstate two hours of leave the Plaintiff had taken, despite evidence of arrival at 11:20 a.m. and departure at 6:00 p.m. on that date.

65.    On June 28, 2023, the Clinical Director inappropriately "shushed" another female physician during the morning meeting, conduct unbecoming and never exhibited toward male physicians, demonstrating gender-based demeaning conduct.

66.    On June 30, 2023, the Clinical Director attempted to deny the Plaintiff's sick leave, furthering the pattern of harassment and authority abuse.

67.    On July 6, 2023, the Plaintiff stayed after hours at work to send a patient to JPS Emergency Room, reflecting the uncompensated extension of duties imposed by the Clinical Director.

68.    On July 11, 2023, the Clinical Director abused authority by entering the Plaintiff's office mid-patient care to discuss first-quarter performance evaluation, denied a Union Representative, hovered over the Plaintiff, and violated personal space.

69.    On July 12, 2023, the Clinical Director accused the Plaintiff of missing patients when scheduling issues, beyond the Plaintiff's control, resulted in cancellations, "no shows," and non-placement on call-out sheets, yet blamed the Plaintiff regardless.

70.     On July 18, 2023, the Clinical Director micromanaged documentation by permitting an APP to submit a consult without revision while forcing the Plaintiff to re-write and disapprove prior requests in a URC meeting, evidencing favoritism and unequal standards.

71.     On July 19, 2023, in a meeting with the Plaintiff and Union Representative, the Clinical Director discussed new "team" assignments and solicited preferences only after the Plaintiff requested involvement, contrasting prior unilateral decisions.

72.     On July 21, 2023, the Clinical Director sent a targeting email to the Plaintiff and staff, highlighting complaints about pharmacy management and documentation related solely to the Plaintiff's assigned patients, rather than issuing broad communications affecting all medical staff.

73.     On July 25, 2023, the Plaintiff discovered an unequal distribution of critically ill patients, 18 out of 18 AIC processed that day fell within the Plaintiff's assigned patient set, indicating disproportionate workload compared to a male colleague, corroborated by a dental colleague's experience and extended after-hours duties.

74.     On July 27, 2023, during an 8:00 a.m. meeting, the Clinical Director made derogatory comments about the Plaintiff's new APP "team" members, minority women, questioning their training and common sense, never conveyed regarding the former white PA.

75.     On August 8, 2023, the Clinical Director targeted the Plaintiff by micromanaging patient scheduling and accusing the Plaintiff of inappropriate call-out management upon return from CME leave, despite pre-existing staffing shortages.

76.     On August 22, 2023, upon return from annual leave and concurrent Medical Officer of the Day duties, the Clinical Director inundated the Plaintiff with accusatory emails

about workload, ignoring staffing deficiencies, while male colleagues received no similar scrutiny, exacerbating stress upon reentry.

77.     On August 30, 2023, the Clinical Director isolated the Plaintiff and her team by conducting individual "counseling" sessions, attempted to convene a meeting during post-call week, which was appropriately cancelled by the Union Representative, again illustrating targeted reprisal.

## COUNT ONE
**(Discrimination on the Basis of Race, Sex, and Color in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.)**

78.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs as if fully set forth herein.

79.     As an African American, female, Plaintiff is a member of a protected class.

80.     Plaintiff was subjected to an adverse action including, but not limited to the following:

> a. Disseminating false Information about Plaintiff's management and care of a patient,
> b. Oppressive work assignments,
> c. Strictly and constantly micromanaged and scrutinized in performing work.
> d. Denied nursing staff and required to see patients without the assistance of a nurse.
> e. Manipulation of leave, including changes to Plaintiff's sick leave
> f. Falsely accused of not seeing scheduled patients,
> g. Denied effective participation in meetings.
> h. Falsely accused of mismanagement of patients.
> i. Denied union representation.
> j. Excluded from transgender meetings.
> k. Undermined Knowledge and experience as an OBG/GYN Surgeon
> l. Improper disclosure of Plaintiff's personnel information.
> m. Issues a minimally satisfactory performance evaluation ratings.
> n. Accused of being late and required use of a permit leave slip.

  o. Attempt to deny sick leave.
  p. Denied the opportunity to serve as Acting Clinical Director.
  q. Belittling comments about Plaintiff's new AAP team.
  r. Persistently targeted and singled out for unfavorable treatment.
  s. Disregarding Plaintiff's reports of harassment.
  t. Issued with an unfavorable rating performance evaluation on April 4, 2024.

81. As these actions to which Plaintiff was subjected was demonstrably harsher than that meted out by Defendant to Plaintiff's white co-workers and male counterparts, under similar circumstances, Plaintiff charges that her treatment was the result of animus towards her based on her race and gender.

82. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges and conditions of Plaintiff's employment.

83. Defendant knew that Plaintiff is an African American female prior to subjecting Plaintiff to the aforementioned material adverse employment actions.

84. As described above, Plaintiff has been treated differently and subjected to different terms and conditions of employment in comparison with her Caucasian and male co-workers.

85. As stated above, other employees that worked in the same or similar position as Plaintiff, under the same management as Plaintiff, and in similar circumstances as Plaintiff, but were members of a different class than Plaintiff by virtue of being Caucasian as opposed to African-American, and male as oppose to female, have been treated more favorably then Plaintiff in the terms and conditions of employment.

86. Plaintiff's race and gender was a determining factor in Defendant's unlawful conduct toward Plaintiff.

87. Plaintiff's race and gender was a motivating factor in Defendant's unlawful

conduct toward Plaintiff.

88.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

89.     Defendant's aforementioned conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her race (African American) and her gender as a female.

90.     Defendant discriminated against Plaintiff because of her race (African American) and gender (female) by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

91.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

92.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

93.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

## COUNT II

### HOSTILE WORK ENVIRONMENT
**(Discrimination on the Basis of Race, Color, Sex, and Reprisal in violation of
Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.)**

94.     Plaintiff incorporates all information and allegations contained in the

preceding paragraphs as if fully set forth herein.

95.     As an African American, Plaintiff is a member of a protected class.

96.     Plaintiff was subjected to unwelcome and offensive by her supervisor based on

Plaintiff's protected class and activities.

97.     The unwelcome and offensive conduct was severe and or pervasive as Plaintiff

regularly targeted and singled out for unfavorable treatment.

98.     The unwelcome and offensive conduct materially affected the terms, privileges

and conditions of and adversely affected Plaintiff's work environment.

99.     Defendant knew of the unwelcome and offensive conduct and actively

participated and endorsed the unwelcome and offensive conduct of its Clinical Director.

100.    Plaintiff's race, gender, and protected activities were determining factors in

Defendant's unlawful conduct toward Plaintiff.

101.    Plaintiff's race, gender, and protected activities were motivating

factors in Defendant's unlawful conduct toward Plaintiff.

102.    The reasons proffered by Defendant for his unlawful conduct are pretextual

and Defendant cannot further offer any legitimate reason for its unlawful conduct.

103.    Defendant's aforementioned conduct has been intentional, deliberate, willful,

malicious, reckless and in callous disregard of the rights of Plaintiff because of her race,

gender, and protected activities.

104.     Defendant discriminated against Plaintiff because of her race, gender and protected activities, by engaging in, tolerating or failing to prevent discrimination and by failing to take affirmative action to correct and redress the unlawful employment practices perpetrated against Plaintiff.

105.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, promotion and promotional opportunities, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

106.     Plaintiff was humiliated, embarrassed and made to endure a great amount of pain and suffering, and his injury is permanent in nature.

107.     Plaintiff has incurred lost wages, loss of reputation and loss of career opportunity now and into the future, and all of the other losses stated without Plaintiff contributing in any way thereto.

**COUNT THREE**

**(Reprisal Discrimination on the Basis of Prior EEO Activity in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.)**

108.     Plaintiff incorporates all information and allegations contained in the preceding paragraphs, as if fully set forth herein.

109.     Plaintiff regularly complained to her supervisor and throughout her chain of command regarding the discriminatory and retaliatory treatment that she was experiencing. Subsequently, Plaintiff filed a Formal EEO Complaint on or about July 4, 2023.

110.     Soon after complaining and filing the Formal EEO Complaint, Plaintiff was subjected to adverse actions alleged throughout this Complaint, including but not limited to:

a.  Disseminating false Information about Plaintiff's management and care of a
    patient,
b.  Oppressive work assignments,
c.  Strictly and constantly micromanaged and scrutinized in performing work.
d.  Denied nursing staff and required to see patients without the assistance of a nurse.
e.  Manipulation of leave, including changes to Plaintiff's sick leave
f.  Falsely accused of not seeing scheduled patients,
g.  Denied effective participation in meetings.
h.  Falsely accused of mismanagement of patients.
i.  Denied union representation.
j.  Excluded from transgender meetings.
k.  Undermined Knowledge and experience as an OBG/GYN Surgeon
l.  Improper disclosure of Plaintiff's personnel information.
m.  Issues a minimally satisfactory performance evaluation ratings.
n.  Accused of being late and required use of a permit leave slip.
o.  Attempt to deny sick leave.
p.  Denied the opportunity to serve as Acting Clinical Director.
q.  Belittling comments about Plaintiff's new AAP team.
r.  Persistently targeted and singled out for unfavorable treatment.
s.  Disregarding Plaintiff's reports of harassment.

111.    Defendant subjected Plaintiff to the aforementioned adverse employment actions

because of her participation and opposition to the unlawful and discriminatory employment

practices of Defendant in violation of D.C. Code § 2-1402.61.

112.    Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in

protected activity prior to engaging in the aforementioned adverse actions when they were

informed by Plaintiff.

113.    The adverse retaliatory actions to which Plaintiff has been subjected are a direct

result of Plaintiff having previously engaged in protected equal employment opportunity activity.

114.    Plaintiff's prior protected activity was a determining factor in Defendant's

unlawful conduct toward Plaintiff.

115.    Plaintiff's prior protected activity was a motivating factor in Defendant's

unlawful conduct toward Plaintiff.

116.    Similarly situated employees with no known prior equal employment opportunity activity were not subjected to the same, similar or any adverse treatment.

117.    The adverse treatment that Plaintiff was subjected to by Defendant was obvious to his co-workers who could and did observe the distress that it caused Plaintiff.

118.    Defendant's unlawful conduct has created a climate of fear and intimidation for Plaintiff and other employees, which creates a chilling effect in violation of D.C. Code § 2-1402.61.

119.    The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot offer any legitimate reason for its unlawful conduct.

120.    Defendant's unlawful conduct negatively impacted the terms, conditions and privileges of Plaintiff's employment.

121.    Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her participation and opposition to Defendant's discriminatory conduct.

122.    As a result of Defendant's conduct alleged in this Complaint, Plaintiff has suffered and continues to suffer harm, including, but not limited to, lost earnings and other financial losses, embarrassment, humiliation and other forms of pain and suffering that is on-going, and permanent in nature without Plaintiff in anyway contributing thereto.

123.    Defendant is responsible for the acts and omissions of its employees for actions taken in the scope of and in the course of their employment.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully prays that this Honorable Court:

      i.    Award compensatory damages in a fair and just amount;

ii.    Damages and equitable relief for all harm Plaintiff has sustained as a result of Defendant's unlawful conduct including for loss of promotional potential, reputation, lost wages, lost job benefits she would have received but for Defendant's unlawful conduct;

iii.    Award any medical costs and expenses incurred as a result of Defendant's unlawful conduct;

iv.    Award reasonable attorney fees, costs, and expenses with interest incurred for this action;

v.    Order Defendant to institute a policy and procedure to be implemented against discrimination;

vi.    Equal Employment Opportunity training for Defendant and the supervisory officials at issue herein;

vii.    Supervisory training for the supervisors at issue herein;

viii.    Award equitable, declaratory, and injunctive relief; and

ix.    Award such other and further relief as this Honorable Court deems just and proper.

## Equitable Relief

124.    Plaintiff hereby incorporates, by reference hereto, the facts, law, and/or allegations contained within the preceding paragraphs, as fully set forth herein.

125.    Because of the actions alleged herein, the continued employment of the supervisors at issue herein without training in equal employment opportunity law, rules and regulations, clear and present dangers to the employees of Defendant and could result in further illegal actions on the part of Defendant, by and through its agents, servants, and employees.

# JURY
# DEMAND

126.    Pursuant to Fed. R. Civ. P. 38, Plaintiff demands trial by jury on all issues so triable.


May 22, 2025,                           Respectfully submitted,

                                        By:  */s/ Donna Williams Rucker*
                                        Donna Williams Rucker
                                        (DC Bar No. 446713)
                                        Managing Partner
                                        Tully Rinckey, PLLC
                                        2001 L Street, NW, Suite 902,
                                        Washington, DC 20036
                                        (202) 787-1900
                                        (202) 640-2059
                                        drucker@fedattorney.com

                                        */s/ George Rose*
                                        George A. Rose
                                        Senior Counsel
                                        Tully Rinckey, PLLC
                                        2001 L Street, NW, Suite 902,
                                        Washington, DC 20036
                                        (202) 787-1900
                                        (202) 640-2059
                                        grose@tullylegal.com

                                        *Counsels for Plaintiff*